**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PATRICK T. BURKE,

                             Plaintiff,

    v.                                                                    No. 01-CV-1396
                                                                            (GLS/DRH)
CAPTAIN SEITZ, Correctional Officer Captain
in Charge of Movement and Control; DOCTOR
BUTTARAZZI, Facility Doctor; CYNTHIA
ERVOLINA, Inmate Records; and JOSEPH
McCOY, Superintendent, Cayuga Correctional
Facility,

                            Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

PATRICK T. BURKE
Plaintiff Pro Se
No. 97-B-1924
Attica Correctional Facility
Box 149
Attica, New York 14011-0149

HON. ELIOT SPITZER                    JAIME IRENE ROTH, ESQ.
Attorney General for the               Assistant Attorney General
 State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

    Plaintiff pro se Patrick T. Burke ("Burke"), an inmate in the custody of the New York

---

[1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services ("DOCS"), brings this action pursuant to the

Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and 42 U.S.C. § 1983

alleging that defendants, four DOCS employees, violated his constitutional rights.  Am.

Compl. (Docket No. 36).  Burke alleges that defendants Captain Seitz, Doctor Buttarazzi, and

Joseph McCoy violated the ADA by failing to provide him with reasonable accommodations.

Id. at ¶¶ 8,14, 18.  Burke also alleges that defendant Seitz repeatedly moved him to different

cells solely to harass and cause him pain in violation of his Eight Amendment rights.  Id. at ¶

6.  Burke further contends that defendant Cynthia Ervolina failed to serve a complaint

prepared by Burke on another inmate in violation of the First Amendment.  Id. at ¶ 20-22.[2]

Finally, Burke contends that Seitz denied him admission to the honor dormitory in retaliation

for Burke filing a grievance.  Id. at ¶ 17.  Presently pending is defendants' motion for

summary judgment pursuant to Fed. R. Civ. P. 56 (b).  Docket No. 51.  For the reasons

which follow, it is recommended that defendants' motion for summary judgment be granted.


## I. Background

The facts are presented in the light most favorable to Burke as the non-moving party.

See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

At all relevant times, Burke was incarcerated at Cayuga Correctional Facility

("Cayuga").  Prior to being incarcerated, Burke injured his back and now has difficulty

---

[2] Burke alleges that Ervolina's conduct violated his due process rights.  However, Burke makes no colorable claim to the deprivation of a right protected by the Due Process Clause and his allegation is properly addressed under the First Amendment.

walking.  Am. Compl. at ¶ 2.[3]  On July 25, 2000, Burke wrote a letter to Superintendent

McCoy complaining that many of his medical issues were not being addressed.  Pl.

Statement of Material Facts (Docket No.55) at 1.[4]  Superintendent McCoy referred the letter

to Dr. Buttarazzi, who determined that all medical issues were appropriately addressed.  Pl.

Exs. (Docket No. 55) at 5-6.  On January 17, 2001, Burke requested that his bunk be lowered

a notch.  Dr. Buttarazzi denied the request, finding that it was not medically necessary.  Pl.

Statement of Material Facts at 3.  Dr. Buttarazzi also denied Burke's February 26, 2001

request for a shower seat, finding that Burke's MRI results were not significant.  Id. at 4.

On September 30, 2000, Burke's request to be placed in the honor dormitory was

granted and he resided there until he was moved to begin an Alcohol and Substance Abuse

Treatment ("ASAT") program.  Defs. Statement of Material Facts (Docket No. 51) at ¶ 12.  In

March 2001, Burke requested to be moved from ASAT housing back to the honor dormitory.

Pl. Statement of Material Facts at 4.  Burke's name was placed on the list and on August 14,

2001, he was moved back to the honor dormitory.  Id. at 4-5.  However, he was removed

eight days later.  Id. at 5.  In June 2001, Burke filed a grievance alleging that Capt. Seitz was

---

[3] Under Fed. R. Civ. P. 56(e), the non-moving party must offer evidence in sworn affidavits to oppose a properly supported motion for summary judgment.  A verified complaint meets this requirement.  See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)), Riley v. Town of Bethlehem, 44 F. Supp. 2d 451, 462 (N.D.N.Y. 1999) (McAvoy, C.J.).  The amended complaint here was affirmed under penalty of perjury and will, therefore, be considered on this motion.

[4] Defendants filed a letter-brief contending that Plaintiff's Statement of Material Facts does not conform to Local Rule 7.1(a)(3).  Docket No. 56.  Because of plaintiff's pro se status and his substantial compliance with the rule, however, the Court accepts Plaintiff's Statement of Material Facts.

denying him admission to the honor dormitory. Id. at 5.  The grievance was denied as
unsubstantiated.

Further, Burke attempted to commence an action against Victor Thayer, an inmate at
another DOCS facility.  Burke followed the DOCS procedure for serving papers on inmates,
but the papers were never served and his complaint was unsuccessful. Id. at 6.  This action
followed.

## II. Discussion

### A. Summary Judgment Standard

A motion for summary judgment may be granted if there is no genuine issue as to any
material fact if supported by affidavits or other suitable evidence and the moving party is
entitled to judgment as a matter of law. The moving party has the burden to show the
absence of disputed material facts by informing the court of portions of pleadings,
depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the
case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 250
(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the
non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine
issue for trial. The non-moving party must do more than merely show that there is some
doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact

4

could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Id.[5] However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. ADA

### 1. Individual Capacity

Burke seeks recovery against defendants under the ADA in both their individual and official capacities.[6] Defendants correctly contend that individuals cannot be held liable under the ADA.  Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Hucks v. Artuz, No. 99-CV-10420, 2001 WL 210238, at *6 (S.D.N.Y. Feb. 27, 2001).

Therefore, it is recommended in the alternative that defendants' motion be granted as to each defendant in his individual capacity on Burke's ADA claims.

---

[5]Nothwithstanding his pro se status, Burke has significant experience in litigation having filed at least six other federal actions in the last nine years.  See U.S. Party/Case Index (visited Jan. 19, 2006) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

[6] Although Burke does not specify, it is assumed that Burke is suing the defendants under Title II of the ADA since Title I relates to employment discrimination.  See Docket No. 19.

## 2. Official Capacities

Defendants contend that they are entitled to sovereign immunity and thus cannot be sued in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.

A suit brought against a person in his or her official capacity must be treated as a suit against the entity represented by that person, provided that the public entity received notice and an opportunity to respond.  Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  In an official capacity action, a government entity is liable only when the entity itself is the "moving force" behind the alleged deprivation.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  In other words, "the entity's 'policy or custom' must have played a part in the violation of federal law" for liability to attach.  Id. (citations omitted); Hafer v. Melo, 502 U.S. 21, 25 (1991).

It has recently been held in this circuit that a plaintiff cannot seek monetary damages against a state or an individual sued in his or her official capacity unless "the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due

6

to disability." <u>Garcia</u>, 280 F.3d at 112.  Here, Burke offers only conclusory statements to demonstrate that the defendants' alleged violation of the ADA was motivated by discriminatory animus or ill will.

Therefore, it is recommended in the alternative that defendants' motion for summary judgment on this ground be granted.

### 3.  Merits

Title II of the ADA applies to state inmates. <u>Pennsylvania Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 209-10 (1998); <u>Beckford v. Portuondo</u>, 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001) (Kahn, J.).  To state a claim under the ADA, an inmate must demonstrate that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity." <u>Clarkson v. Coughlin</u>, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

Here, it is disputed whether Burke is a "qualified individual with a disability."  Burke alleges that he is disabled "because he is limited in walking, a major life activity under [the ADA]."  Am. Compl. at ¶ 2.  Defendants contend that although Burke may have difficulty walking, this limitation is not substantial and therefore does not qualify as a disability under the ADA.  Defs. Mem. of Law (Docket No. 51) at 9.  However, even assuming that Burke's injury does qualify as a disability under the ADA, he has failed to raise a question of fact whether defendants' actions were motivated in any way by his alleged disability and has thus failed to demonstrate that he was denied a benefit of any service, program, or activity based

7

on his disability.  Moreover, Burke admits that defendants provided him with "a cane, a tens unit, a lower bunk permit, pain medication, doctor appointments, physical therapy, and have changed institutions because of my disability."  Pl. Mem. of Law (Docket No. 55) at 6.  Thus, even if Burke does qualify as an individual with a disability under the ADA, defendants have reasonably accommodated Burke's requests.

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted.


### C.  Eighth Amendment

Burke contends that defendant Seitz violated his Eighth Amendment rights by repeatedly moving him solely to harass and cause him pain.  Further, a liberal reading of the complaint shows that Burke also alleges that defendants violated his Eighth Amendment rights by (1) denying him a shower chair, (2) not lowering his bed, and (3) failing to treat his difficulty in breathing.

The Eighth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  Cooper Indus. Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-34 (2001).  It prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  The Eighth Amendment also imposes a duty upon prison officials "to take reasonable measures to guarantee the safety of the inmates themselves."  Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  A prison official violates this Eighth Amendment duty only when two criteria are established.  First, the deprivation must be "'objectively, sufficiently serious' that [the inmate] was denied 'the minimal civilized measure of life's

necessities.'" Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "This objective component . . . is also context specific, turning upon 'contemporary standards of decency.'" Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citations omitted)).

Second, a defendant "must have [acted with] a 'sufficiently culpable' state of mind." Farmer, 511 U.S. at 834. "'In prison condition cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." Id.; Gaston, 294 F.3d at 164. "Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 620 (2d Cir. 1996). A plaintiff can demonstrate deliberate indifference by evidence that "a substantial risk [to inmate health and safety] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus 'must have known' about it . . . ." Farmer, 511 U.S. at 842-43.

Here, viewing the evidence in the light most favorable to Burke, Burke fails to demonstrate that Seitz repeatedly moved him in an attempt to harass and cause him pain. Burke's conclusory allegations do not meet either the "objectively, sufficiently serious" or "'sufficiently culpable' state of mind" criteria needed to demonstrate that Seitz violated his Eighth Amendment duty. Moreover, Burke does not provide any evidence that shows that Seitz was aware of pain being caused by the moves and chose to disregard the risk of inflicting more pain upon Burke.

9

Therefore, it is recommended that defendants' motion for summary judgment on this ground be granted.

### 1. Medical Needs

Burke also contends that defendants violated his Eighth Amendment rights by (1) denying him a shower chair, (2) not lowering his bed, and (3) failing to treat his difficulty in breathing.  Defendants contend that these claims are without merit.

In the case of a prisoner asserting an Eighth Amendment claim for denial of medical care, the prisoner must allege that prison officials were deliberately indifferent to a serious medical need. Mere allegations of inadvertent failure to provide adequate medical care or of negligent diagnosis fail to establish the requisite culpable state of mind. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Rangolan v. County of Nassau, 217 F.3d 77, 79 (2d Cir. 2000). In addition, medical malpractice or disagreement over the proper course of treatment does not rise to the level of a constitutional violation merely because the victim is an inmate. Estelle, 429 U.S. at 106; Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

When determining whether an inmate has a serious medical need, courts look to the following non-exhaustive list of factors: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of treatment; (2) whether the medical condition significantly affects daily activities; and (3) the existence of chronic and substantial pain. Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). There is no requirement that the inmate experience severe or extreme pain or that the condition will deteriorate into a life-threatening one. Id. at 163.

Here, it is unclear whether Burke's condition constitutes a "serious medical need." However, even if Burke's condition is considered serious, his Eighth Amendment claim fails to show "deliberate indifference" or that defendants did not treat his ailments.  The deliberate indifference standard requires an inmate to show that the prison official knew that the inmate had a serious medical need and in turn, acted with a conscious disregard to this need. Chance, 143 F.3d at 702. Each defendant must have acted with a sufficiently culpable and reckless state of mind, measured by a subjective standard. Farmer, 511 U.S. at 834.  Burke has failed to demonstrate that any defendant consciously disregarded Burke's medical needs.  It is undisputed, for example, that defendants provided Burke with a cane, a TENS unit, a lower bunk, medication, examinations, therapy, and transfers to other residential areas  Thus, even assuming that Burke's condition constituted a "serious medical need," he still has not shown any evidence beyond conclusory statements that defendants consciously disregarded his condition.

Therefore, it is recommended that defendants' motion on this ground be granted.


### D. Retaliation

Burke contends that Seitz denied him re-admission to the honor dormitory in retaliation for filing a grievance.  Defendants contend that this claim is without merit.

In order to prevail on a retaliation claim, a plaintiff must first assert that the plaintiff's conduct is constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff. The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the

11

absence of the protected conduct. <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977); <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d. Cir. 2001). Retaliation claims are actionable because they may tend to chill an individual's exercise of constitutional rights. <u>Dawes</u>, 239 F.3d at 491. However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. <u>Id.</u>

Here, Burke's filing of grievances was clearly an assertion of a constitutional right protected by the First Amendment. <u>Morales v. Macklam</u>, 278 F.3d 126, 131 (2d Cir. 2002). Burke claims that the adverse action which resulted from filing grievances was his removal from the honor dormitory. In order for any action to constitute adverse action, a plaintiff must establish that the adverse action would deter a similarly situated individual from exercising their constitutional rights. <u>Dawes</u>, 239 F.3d at 491. It is reasonably possible that other inmates would fail to exercise their constitutional right to file grievances for fear that they would be removed from the honor dormitory. Thus, Burke's' alleged removal from the honor dormitory in retaliation for filing a grievance could be considered adverse action.

However, Burke fails to show a causal connection between the filing of the grievance and the removal from the honor dormitory because he only offers conclusory evidence to support this claim. In September 2000, Burke was moved into the honor dormitory at Cayuga. In December, Burke began the ASAT program, which required him to be removed from the honor dormitory. On March 29, 2001, Burke requested to be placed back in the honor dormitory and was notified that his name was added to the waiting list and he would have to wait for a vacancy. Burke did not file a grievance against Seitz until June, 2001. Thus, Seitz could not have retaliated against Burke and kept him from the honor dormitory on

account of a grievance because Burke was placed on the waiting list well before he filed a grievance against Seitz.

Therefore, it is recommended that defendants' motion on this ground be granted.

### E. Access to Courts

Burke contends that defendant Ervolina denied him access to the courts by not serving a complaint Burke prepared upon another inmate.  Defendants contend that this claim is without merit.

All persons have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997).  To establish a violation of the right of access to the courts, a prisoner must demonstrate that his or her efforts to pursue a legal claim were impeded.  Lewis, 518 U.S. at 351; Bourdon v. Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004).  A plaintiff must demonstrate not only that a defendant's conduct was deliberate and malicious, but also that this conduct caused an actual injury such as the "dismissal of an otherwise meritorious legal claim."  Cancel v. Goord, No. 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing Lewis, 518 U.S. at 351).

Here, Burke has failed to demonstrate that his alleged claim was meritorious, concluding that since the complaint was not timely filed, "the complaint was dismissed and the plaintiff lost his money as a result of Cynthia Ervolina's denial of access to the courts." Docket No. 55 at 18.  This conclusory statement fails to demonstrate that Burke suffered "actual injury" from the failure of his complaint to be served.  Moreover, Burke has failed to show that Ervolina's conduct was "deliberate and malicious."

13

Therefore, it is recommended that defendants' motion on this ground be granted.

### F. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Burke's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, defendants' motion for summary judgment on this alternative ground should be granted.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 51) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

14

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:  January 24, 2006
        Albany, New York

David R. Homer
United States Magistrate Judge